Harry G. Herman, S.
In this trustees’ final accounting several of the remaindermen have filed various objections, the more important of which is that the trustees should be surcharged the amount of the capital gains tax resulting from the sale of trust assets after a request for a distribution in kind had assertedly been made and the failure of the trustees to advise the remaindermen of the tax situation. The trust was originally established in 1949 when the decedent died; his widow who had a life interest in the trust died in 1954, and the entire trust terminated when decedent’s daughter died on June 26, 1963 — she was the second measuring life of the trust. The trustees liquidated all securities in the trust during the middle of August, 1963, and realized a gross profit of about $97,000, a loss of about $20,000, and paid a capital gains tax of about $19,000 on the net profit.
At the hearing there was testimony that an attorney for one of the remaindermen had visited the office of one of the trustees, also the attorney for the petitioners, on August 6, 1963 and “ discussed ” the matter of a distribution in kind of the trust corpus. There was no proof that any other remainderman, including the general guardian of two of the infant remainder-men, had bestirred themselves although all parties had been advised by the trustees within two weeks of the death of the measuring life beneficiary, a close relative of all the remaindermen.
*833 The eight remaindermen resided in Hawaii, California, Mississippi, Florida and New York. One of the remaindermen had assigned a substantial cash portion of his inheritance in November, 1963, after the return of the original citation on October 29, 1963. Another remainderman, who filed no objections, petitioned this court for a part cash payment of his share alleging that he was agreeable to a sale of the securities and wanted his share in cash. There was no attempt by any of the remaindermen to comply with section 268 of the Surrogate’s Court Act which provides the procedures and requirements for a distribution in kind. Objections were filed in November and December, 1963.
The corpus of the trust consisted of assets totalling approximately $200,000 made up of debentures, treasury notes and common stocks. There was no proof other than the August, 1963, visit of the attorney for one of the remaindermen to the trustee attorney, and some possible discussion among themselves of several of the adult remaindermen, as to such a property distribution. Such a distribution requires the consent of all the parties (Surrogate’s Ct. Act, § 268; Matter of Holsworth, 166 App. Div. 150, affd. 215 N. Y. 700). Where there are several beneficiaries and some of them do not consent to a distribution in kind, or some of them are non sui juris, the others cannot ordinarily insist upon a distribution of their shares to them in kind, unless distribution in kind is authorized by the terms of the trust or by an order of the court (3 Scott, Trusts [2d ed.], § 347.4). The trustees under the circumstances in this matter acted promptly and fairly in liquidating the assets and taking advantage of the existing profit potential in the portfolio; any protracted delay, which was inevitable because of the widespread residences of the remaindermen and the fact that two were infants, plus the fact that at least one beneficiary wanted cash, would have exposed the trust to a possible loss in a fluctuating stock market. There had been a sharp drop in stock values only a year before.
The argument is made that if there had been a distribution in kind, those of the remaindermen who had capital losses (and there was no proof that any had such losses) could have offset these losses at such time as they would have realized taxable capital gains upon the sale of the trust securities.
During the course of the hearing the court directed questions to the accounting trustees and to the attorneys for the objectants relative to the ultimate responsibility for the capital gains tax. In the event that there had been a distribution in kind and the remainderman had sold his share of the trust assets at a price *834 higher than the cost to the trustees, it is obvious that the remainderman would have to pay a capital gains tax on the profit. The capital gains tax paid by the trustees in the instant matter inures to the prorata benefit of each remainderman against which he could offset losses sustained in the same taxable period. The Internal Revenue Code has provision for this type of situation (see §§ 643, 652, subd. [b]§§ 661, 662 Internal Revenue Code; U. S. Code, tit. 26).
Under these circumstances it would be manifestly improper to surcharge the trustees with the amount of the capital gains tax that was paid as this represented an asset in the form of a tax credit in favor of each remainderman. In the instant proceeding, however, while the great bulk of the assets that were sold resulted in a capital gains tax, the trustees offset against this gain the loss sustained in the liquidation of the trust from other securities which were sold below cost. The objection that is made in the form of an attempted surcharge against the trustees under these circumstances must be denied and this objection is dismissed.
The remaining objections as to the payment of principal commissions, the requested legal fees, and the payment of a $50 fee to the Chase Manhattan Bank in 1959 for a review of the portfolio, the payment to the bank of $229.46 for custody fees, and a $60 fee to an accountant for preparation of an income tax return are also dismissed as without merit and for a complete absence of proof.
Petitioners’ request for an additional fee for the trial of these objections is denied in the discretion of the court.